UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                            :
YVONNE COHEN,                                               :
*as administrator of the estate of Charles Tebo*,           :   12 Civ. 9085 (PAE)
                                                            :
                                        Plaintiff,          :   OPINION & ORDER
                                                            :
                -v-                                         :
                                                            :
THE NEW YORK COMMUNITY TRUST                                :
RETIREMENT PLAN and THE PLAN COMMITTEE OF                   :
THE NEW YORK COMMUNITY TRUST                                :
RETIREMENT PLAN, *as plan administrator*,                   :
                                                            :
                                        Defendants.         :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff Yvonne Cohen brings this action as Administrator of the Estate of her brother, Charles Tebo, a deceased former participant in the New York Community Trust Retirement Plan (the "Plan").[1] Cohen alleges that defendants—the Plan and its administrator, The Plan Committee of the New York Community Trust Retirement Plan (the "Committee")—violated the Employee Retirement Income Security Act of 1974 ("ERISA") by improperly calculating the benefits owed to Tebo under the Plan. Defendants move to dismiss the Complaint. Cohen cross-moves for summary judgment. For the reasons that follow, defendants' motion is granted and Cohen's motion is denied.

---

[1] Cohen also brings this action on behalf of all similarly situated Plan participants, their survivors, and estates. Compl. ¶ 1.

I.  **Background**

   A.  **Factual Background**[2]

Tebo, now deceased, had been an employee of The New York Community Trust (the "NYCT"). Compl. ¶ 5. Cohen is the administrator of his estate. *Id.* The NYCT maintains a defined benefit pension plan (the "Plan") to provide retirement income for its employees. *Id.* ¶¶ 5–6. The Plan Committee of the New York Community Trust Retirement Plan (the "Committee") is the administrator of the Plan. *Id.* ¶ 8.

Tebo worked for NYCT between March 6, 1989 and September 7, 1994, a period of 5.583333 years. *Id.* ¶ 10. During that time, he was a participant in the Plan. *Id.* ¶ 11.

Under the terms of the Plan, a participant's "Lifetime Pension," and its actuarially equivalent lump-sum payment, is based on the participant's "Final Average Earnings." *Id.* ¶ 24; *see also* Plan art. 5.1. The Plan defines Final Average Earnings as:

> [T]he average Earnings of a Participant during the five highest consecutive calendar years within the last ten full calendar years immediately preceding the Participant's Retirement Date, date of death, or other earlier termination of Employment. If the Participant had Earnings during fewer than five consecutive calendar years, his Final Average Earnings shall be the average of his Earnings for all years during which he had earnings.

---

[2] The Court's account of the facts is drawn from: the Complaint ("Compl.") (Dkt. 1); the full text of the Plan, *see* Declaration of David S. Versfelt (Dkt. 9), Ex. B; and a November 15, 2011 email from defense counsel to plaintiff's counsel which transmits the calculations used to determine Tebo's benefits, *see* Declaration of Edgar Pauk ("Pauk Decl.") (Dkt. 19) Ex. 2, and which is incorporated by reference in the Complaint, *see* Compl. ¶ 27. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (court may consider materials incorporated in the complaint by reference and materials that are "integral" to the complaint, without converting motion to one for summary judgment). Defendants do not dispute any facts regarding the Committee's calculation of Tebo's benefits. *See* Def. Reply Br. 2.

2

Plan art. 2.21. Tebo was not employed by the NYCT for five full consecutive calendar years. Rather, he was employed by the NYCT for four full calendar years from 1990 to 1993, and two partial calendar years—1989 and 1994. Compl. ¶ 29.

Under Article 2.21 of the Plan, the Committee calculated Tebo's Final Average Earnings by adding his compensation for each year he worked—including 1989 and 1994—and dividing that sum ($436,715) by the total number of years Tebo had worked (5.583333). This yielded $78,218 as Tebo's Final Average Earnings. *Id.* ¶¶ 30–31; *see also* Pauk Decl. Ex. 1.[3] The Committee then applied the Plan benefit formula to this amount to determine that Tebo's monthly pension would be $1,268.33, which translates to an actuarially-equivalent lump-sum payment of $159,033.36. *Id.* ¶¶ 32–33. Tebo died on March 25, 2012. *Id.* ¶ 34.

### B.     Procedural History

On December 13, 2012, Cohen filed a Complaint, seeking: a declaration that "Defendants have violated ERISA's minimum accrual standards, namely 26 CFR § 1.411(a)-7(c)(5), in calculating members' Final Average Earnings, thereby underpaying their pension benefits"; an order enjoining further violations of ERISA, directing defendants to bring the Plan into compliance with 26 CFR § 1.411(a)-7(c)(5), and directing defendants to recalculate the accrued benefits and to compensate plaintiffs accordingly; and attorney's fees and costs. *See* Dkt. 1.

---

[3] Tebo's yearly earnings were:

```
1989 - $62,500
1990 - $76,500
1991 - $78,000
1992 - $80,000
1993 - $82,000
1994 - $57,715
Total - $436,715
```

On February 25, 2013, defendants filed a motion to dismiss the Complaint, arguing that the Committee's interpretation of the Plan was reasonable and that the Plan complies with 26 CFR § 1.411(a)-7(c)(5). *See* Dkt. 8–10. In lieu of filing an amended complaint, *see* Dkt. 11, Cohen requested permission to file a cross-motion for summary judgment. *See* Dkt. 12. In response, on April 1, 2013, the Court held a pre-motion conference. At that conference, the Court specified that Cohen's cross-motion was to take the form of a motion for judgment on the pleadings and, accordingly, should be confined to the pleadings. *See* Part III(c), *infra*. Nevertheless, on April 8, 2013, Cohen filed a motion styled as a cross-motion for summary judgment, based on regulations not mentioned in the Complaint. Cohen also submitted a Local Rule 56.1 Statement of Undisputed Materials Facts. *See* Dkt. 14, 16, 19–20.

On April 25, 2013, defendants filed a memorandum of law in opposition to Cohen's motion for summary judgment, Dkt. 22, and an affidavit from the actuary who had calculated Tebo's benefits, attaching several letters from the Internal Revenue Service ("IRS") regarding the Plan's compliance with Treasury regulations, Dkt. 21. On May 6, 2013, Cohen filed a reply. Dkt. 23.

## II.    Applicable Legal Standards

In resolving a motion to dismiss, the Court must "construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012). Nevertheless, the "[f]actual allegations must be enough to raise a right of relief above the speculative level," and the complaint must plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claim]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Put differently, "[t]o survive a motion to dismiss, a

4

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC*, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 520 (2d Cir. 2006). If, on a Rule 12(c) motion, "the Court is presented with material outside of the pleadings, it should exclude the material in its consideration of the motion." *Chambers v. Time Warner*, 282 F.3d 147, 154 (2d Cir. 2002).

Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is 'whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Costor v. Sanders*, No. 07 Civ. 11311 (NRB), 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009) (quoting *Krijn v. Pogue Simone Real Estate Co.*, 896 F.32d 687, 689 (2d Cir. 1990)).

## III. Discussion

### A. Standard of Review

An administrator's interpretation of an ERISA benefits plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where such discretionary authority is given, the administrator's interpretation of the plan is reviewed for abuse of discretion. *Id.*; *accord McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 130 (2d Cir. 2008). "Under th[is] deferential standard, a court may not overturn the administrator's denial of benefits unless its actions are found to be arbitrary and capricious, meaning 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *McCauley*, 551 F.3d at 132 (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)). "Where both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *Id.* (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92–93 (2d Cir. 2000)).

By contrast, when a court is "called on to judge [a plan's] compliance with the applicable statute and regulations . . . [the court] owe[s] the plan administrator no deference. The interpretation of ERISA, a federal statute, is a question of law subject to *de novo* review." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 581 (2d Cir. 2006) (citation omitted).

Here, as Cohen concedes, *see* Pl. Br. 5, the Plan gives the Committee discretionary authority. *See* Plan art. 10.1. Thus, to the extent Cohen is challenging the Committee's interpretation of the Plan, that interpretation is reviewed for abuse of discretion. *Firestone*, 489

6

U.S. at 115. To the extent Cohen argues that the Plan's plain terms do not comply with the requirements of ERISA or its implementing regulations, the Court reviews that question *de novo*. *Wilkins*, 445 F.3d at 581–82.

### B. Defendants' Motion to Dismiss

In their motion to dismiss, defendants argue that the Committee's calculation of Tebo's benefits was in full accord with the terms of the Plan, and that the Plan is in full accord with the Treasury regulation upon which Cohen bases her claim. The Court agrees.

#### 1. The Committee's Interpretation of the Plan

Tebo was employed by the NYCT for four full calendar years and two partial calendar years. Compl. ¶ 29. As noted, the Plan defines Final Average Earnings as:

> [T]he average Earnings of a Participant during the five highest consecutive calendar years within the last ten full calendar years immediately preceding the Participant's Retirement Date, date of death, or other earlier termination of Employment. *If the Participant had Earnings during fewer than five consecutive calendar years, his Final Average Earnings shall be the average of his Earnings for all years during which he had earnings.*

Plan art. 2.21 (emphasis added). The Committee interpreted this second sentence as requiring that Tebo's benefits be calculated by adding his earnings for all four full calendar years and both partial calendar years, and dividing this sum ($436,715) by the total number of years he worked (5.583333). *See* Pauk Decl. Ex. 1; Compl. ¶¶ 28–33. Cohen, by contrast, describes the Plan so as to omit entirely, from the definition of "Final Average Earnings," the emphasized second sentence. *See* Compl. ¶ 25. Reading the first sentence in isolation, Cohen seeks to use Tebo's earnings from 1990–1994, excluding his earnings from 1989, to calculate Tebo's Final Average earnings.

7

The definition of "Final Average Earnings," however, must be read in its entirety. As Cohen herself acknowledges, *see* Pl. Br. 9–10, when the second sentence of that definition is taken into account, Article 2.21 sets out measurement criteria corresponding to two distinct groups of participants: those who have worked five consecutive calendar years, and those who have not. Because Tebo worked for only four full consecutive calendar years, he falls in the latter category. Therefore, Article 2.21 contemplates that his Final Average Earnings be calculated by averaging his earnings over the entire course of his employment, as the Committee did.

Notably, although Cohen argues that the Plan does not comply with ERISA, Cohen does not claim that the Committee misapplied the term "Final Average Earnings"—when read in its entirety—to Tebo. Nor could she. The Plan defines "Earnings" as a full-year's annual salary: "the annual basic salary or wages received by a Participant." Plan art. 2.14. Given that, a participant who worked fewer than five full consecutive years necessarily is governed by the second sentence of the definition of "Final Average Earnings." Such is the case here. To be sure, the second sentence of Article 2.21 calls for averaging a participant's "Earnings" for all years during which he had "earnings," which might suggest that the benefits of a participant who works a partial year should be calculated using the salary he would have received had he worked that full year, rather than what he actually received in that partial year. However, there is no provision in the Plan for such annualization, and implicit in Article 2.21's repeated references to five consecutive calendar years is a requirement that the participant work the entirety of those five calendar years to fall under the first sentence. The Committee's interpretation of the Plan in calculating Tebo's benefits was eminently not an abuse of discretion (and Cohen does not so argue, *see, e.g.*, Pl. Br. 3 ("this litigation presents an issue of law, rather than plan

8

interpretation")). Quite the contrary: The Committee quite reasonably applied the plain language of the Plan to the facts at hand.

### 2. The Plan's Compliance with ERISA

Cohen argues that the Plan as written and interpreted by the Committee violates 26 C.F.R. § 1.411(a)-7(c)(5), which, as excerpted in the Complaint, provides:

> If a defined benefit plan bases its normal retirement benefits on employee compensation, the compensation must reflect the compensation which would have been paid for a full year of participation within the meaning of section 411(b)(3).
>
> [I]f a plan provided a benefit based on an employee's compensation for the employee's last five years or the five highest consecutive years out of the last 10 years, the compensation, would have to be so adjusted.

Compl. ¶¶ 35–36. Cohen interprets this regulation to require the Committee to annualize Tebo's 1994 partial year of compensation, disregard his 1989 compensation, and therefore compute his Final Average Earnings by averaging his five highest earning calendar years—*i.e.*, 1990 to 1993, and 1994 annualized. This would have yielded a Final Average Earnings of $80,100, which in turn would have amounted to a lump-sum pension benefit of $170,747.11—$11,713.75 more than Tebo was awarded. *Id.* ¶¶ 37–40.

> Cohen, however, omits critical language. The regulation, in its entirety, provides:
>
> If a defined benefit plan bases its normal retirement benefits on employee compensation, the compensation must reflect the compensation which would have been paid for a full year of participation within the meaning of section 411(b)(3). *If an employee works less than a full year of participation, the compensation used to determine benefits under the plan for such year of participation must be multiplied by the ratio of the number of hours for a complete year of participation to the number of hours worked in such year. A plan whose benefit formula is computed on a computation base which cannot decrease is not required to adjust employee compensation in the manner described in the previous sentence. Thus, for example, if a plan provided a benefit based on an employee's compensation for his highest five consecutive years or a separate benefit for each year of participation based on the employee's compensation for such year the plan would not have to so adjust compensation.* However, if a plan provided a benefit based

on an employee's compensation for the employee's last five years or the five highest consecutive years out of the last 10 years, the compensation, would have to be so adjusted. For special rules for applying the limitations on proration of a year of participation for benefit accrual, see regulations prescribed by the Secretary of Labor under 29 CFR Part 2530, relating to minimum standards for employee pension benefit plans.

26 C.F.R. § 1.411(a)-7(c)(5) (emphasis added).

The omitted language is decisive. Under the plain terms of this regulation, a Plan need not annualize a participant's partial-year compensation when that partial-year compensation is not used to decrease his computation base. As the examples illustrate, the regulation is concerned with the situation in which a participant is employed only for a portion of a calendar year, and therefore receives only a portion of his typical annual compensation that year, but that partial year's compensation is nevertheless used to compute his average as if it had been the rate used to calculate pay for a full year. But the Committee did not do that here. It did not take Tebo's 1994 salary of $57,715 and treat that as if Tebo had earned that salary over an entire calendar year. Rather, the Plan provides that Tebo's benefits must be calculated by averaging all of his earnings, *see* Plan art. 2.21, and in so doing, the Plan attributed to Tebo, as to 1994, only the actual sums he earned that year. Put differently, the Plan took all of Tebo's earnings and divided those aggregate earnings by the exact number of years he had worked, 5.583333. Thus, Tebo was not penalized for working two partial calendar years. Indeed, elsewhere in her brief, Cohen admits as much. *See* Pl. Br. 8 ("Admittedly, the exception in the Regulation does not require a plan to annualize compensation when a plan provides 'a separate benefit for each year of participation based on the employee's compensation for such year,' *as the NYCT Plan does for participants with less than five full calendar years of compensation.*" (emphasis added)). The Complaint therefore fails to state a violation of law and must be dismissed.

10

### C. Cohen's Cross-Motion for Summary Judgment

In an apparent concession that defendants' reading of 26 C.F.R. § 1.411(a)-7(c)(5) is correct, Cohen seeks in her cross-motion for summary judgment to effectively invalidate the key sentences of that regulation, which she terms an "exception" that is "unenforceable." Cohen argues that "ERISA, the [Internal Revenue] Code and Regulations governing both do not permit a plan to differentiate between two groups of participants based solely on the number of years of their participation in the plan, as the NYCT Plan does." Pl. Br. 8. But Cohen may not pursue this new theory of liability at this stage of the case. This theory not only is not reflected in the Complaint—it is inconsistent with the Complaint's theory of liability, which was based on the validity of the very regulation Cohen now seeks to invalidate.

Notably, at the April 1, 2013 pre-motion conference, called to discuss the motion for summary judgment that plaintiff's counsel stated he anticipated making, the Court engaged in a colloquy with counsel designed to forestall such new claims from arising. At that conference, plaintiff's counsel, Edgar Pauk, Esq., stated that his client's claims in this lawsuit present a pure question of law, and that plaintiff did not need discovery to prevail on the issue of liability. *See* Transcript of 4/1/13 Conference ("Tr.") at 2–3. Defense counsel, David S. Versfelt, Esq., took the position that, although the Complaint was legally infirm and subject to dismissal, were the case not to be dismissed on the pleadings, discovery might be needed before a motion for summary judgment was ripe. Mr. Versfelt specifically noted that, in two letters to defendants, Mr. Pauk had alleged that the Plan also violates regulations not mentioned in the Complaint, and that those extra-Complaint claims might require discovery to resolve. *Id.* at 3. The Court then clarified that the Complaint, which plaintiff had declined to amend, was a "fixed target," and that plaintiff's motion for summary judgment would be considered a motion for judgment on the

11

pleadings. *Id.* at 3–4. At this point, Mr. Versfelt, defense counsel, stated that "if the motion to be made by the plaintiffs is as your Honor stated it, a motion on the pleadings," defendants do not need discovery and do not object to plaintiff's filing such a motion. *Id.* at 4. But, defense counsel clarified, "I don't want to get into a position where I'm precluded from offering discovery in opposition to the summary judgment motion if there are new provisions raised." *Id.* The Court then engaged plaintiff's counsel in the following colloquy:

> The Court: The motion to dismiss was filed on February 25. You were given the opportunity to submit an amended complaint. You did not do so, correct?
> Mr. Pauk: We felt no need for it. *Because the issue's still the same as a violation of the regulation which we listed in the complaint.* Their defense was there is an exception to the application of the regulations, so we used another regulation to show that the exception isn't applicable.
> The Court: The point is that the complaint at this point is a fixed target.
> Mr. Pauk: Yes.
> The Court: For better or worse you've made the judgment you want to stand on the complaint as drafted.

*Id.* at 5 (emphasis added).

Notwithstanding this colloquy, Cohen's ensuing motion was styled as one for summary judgment and is based on regulations not mentioned in the Complaint.[4] *See* Pl. Br. 9–14, 18–21. Because the Court had specified (and plaintiff's counsel had agreed) that Cohen's cross-motion

---

[4] At the pre-motion conference, Cohen's counsel characterized defendants' motion to dismiss as asserting a "defense [that] there is an exception to the application of the regulations," and, accordingly, stated that Cohen had merely raised additional regulations to show that this defense is not applicable. Tr. 5. But that is an incorrect characterization. Defendants' argument is simply that the Plan—contrary to the express allegation in Cohen's Complaint—does not violate 26 C.F.R. § 1.411(a)-7(c)(5). In so arguing, defendants do not rely on an "exception" to that regulation, but on its text. It is Cohen, belatedly seeking to claim that the regulation on which her Complaint relied was invalid, who invokes extrinsic regulations.

12

was to be confined to the pleadings and that the Complaint was a "fixed target," the Court will treat Cohen's motion as one for judgment on the pleadings under Rule 12(c).[5]

As such, however, Cohen's motion must be denied, because a plaintiff cannot seek such relief based on a violation of law that is alleged nowhere in her pleadings. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 42 (2d Cir. 2009) (claim must be set forth in pleadings to provide a basis for relief). Nor can Cohen use the vehicle of her opposition to defendants' motion to dismiss as a means, *sub silentio*, to amend her pleadings to raise new claims. *See In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 124 (S.D.N.Y. 2010) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." (quoting *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005)); *accord Rojas v. Don King Prods., Inc.*, No. 11 Civ. 8468 (KNF), 2012 WL 760336, at *5 (S.D.N.Y. Mar. 6, 2012); *Santiago v. Pressley*, No. 10 Civ. 4797 (PAE), 2011 WL 6748386, at *5 (S.D.N.Y. Dec. 23, 2011). The Court therefore declines to consider Cohen's new claims.[6]

---

[5] This characterization is further warranted by the fact that Cohen has not adduced any evidence in support of her new claim: She merely argues that the portion of the Treasury regulation that defendants cite in support of the validity of the pertinent Plan provision is invalid. The only evidentiary materials before the Court that are not incorporated by reference in the Complaint are the IRS letters and the affidavit of the actuary who calculated Tebo's benefits. That evidence was presented not by Cohen but by defendants in their opposition to Cohen's cross-motion. The Court has disregarded it and has confined its review to the pleadings.

[6] Even if Cohen's extra-Complaint claims were considered on their merits, they are unavailing. Cohen's first argument relies on 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F), which prohibits changing the base of computation of retirement benefits based solely on an increase in the number of years of participation in the plan. But this subsection is designed to prevent a plan from circumventing the 133 1/3 % rule—which prohibits "backloading" benefits by increasing the accrual rate by more than one-third in any future year—by changing the computation base due to length of employment. *See Langman v. Laub*, 328 F.3d 68, 71 (2d Cir. 2003); *Esden v. Bank of Boston*, 229 F.3d 154, 167 n.18 (2d Cir. 2000). This principle is illustrated by the examples provided in the regulation itself, and in the cases Cohen cites. *See* 26 C.F.R. § 1.411(b)-1(b)(2)(ii)(F); *Helms v. Local 705 Int'l B'hood of Teamsters Pension Plan*, No. 97 C 4788, 1999 WL 965230, at *14–

13

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted and Cohen's cross-motion for summary judgment is denied. The Complaint is dismissed, with prejudice.[7] The Clerk of Court is directed to terminate the motions pending at docket numbers 8 and 14, and to close this case.

---

15 (N.D. Ill. Sept. 30, 1999); *Carollo v. Cement & Concrete Workers Dist. Council Pension Plan*, 964 F. Supp. 677, 681 (E.D.N.Y. 1997). However, the Plan here, unlike in the examples used in the regulation and the foregoing cases, is not designed to favor longer tenured employees by backloading their benefits. Although the Plan's computation base does change in year five, that is solely a product of necessity: Otherwise, the participant would lack the minimum years of participation necessary to calculate his benefits on a final average basis. Although Cohen argues that the answer to this problem instead ought to be to annualize the partial years' wages, 26 C.F.R. § 1.411(a)-7(c)(5) expressly states that this is not necessary. The Court declines to adopt Cohen's strained reading, which "completely misapprehends the acknowledged purpose of the 133 1/3 percent test, which is to prevent the practice known as backloading of benefits." *Langman*, 328 F.3d at 71 (citation omitted).

Cohen's second argument also fails. Cohen argues that the Plan commits "prohibited double proration" in violation of 29 C.F.R. § 2530.204-2(d). But the illustration to that regulation demonstrates that it is meant to prevent a part-time employee's benefits from getting docked twice: once for his lower compensation in any given year, and a second time for the fact that his total hours worked over a number of years add up to less than the hours equating to that many full years of participation. Thus, if a part-time employee works half the number of hours that constitute full participation each year for 20 years, and therefore makes half the yearly wages he would for full-time employment, his benefits may not be calculated by prorating his participation to 10 years of employment (even though over the course of 20 part-time years, he worked the equivalent of 10 full-time years). *See id.* § 2530.204-2(d)(i). However, no such unfair tabulation was done with respect to Tebo's hours: He worked full-time for an aggregate of 5.58333 years, and his benefits calculation gave him credit for all 5.5833 years—no more, and no less.

[7] Having dismissed Cohen's claims on the merits, the Court does not reach defendants' alternative arguments that (1) those claims are not exhausted, *see* Def. Br. 12; Def. Reply Br. 8; and (2) Cohen lacks standing to bring certain of these claims, *see* Def. Reply Br. 10–12.

14

SO ORDERED.

*Paul A. Engelmayer*
_____
Paul A. Engelmayer
United States District Judge

Dated: June 26, 2013
       New York, New York